FIRST HEALTHCARE CORPORATION D/B/A HILLHAVEN SOUTH, INC. D/B/A WINSTON-SALEM CONVALESCENT CENTER, Plaintiff v. NELL H. RETTINGER, Ind., and NELL H. RETTINGER, as personal representative of the Estate of Lawrence John Rettinger, Deceased, Defendant

No. 9421SC634

(Filed 2 May 1995)

**1. Death § 14 (NCI4th)— costs for nursing home services rendered after request to discontinue extraordinary life prolonging treatment—compliance with living will statute—genuine issues of material fact**

In an action to recover for nursing home services rendered to a patient who was kept alive by means of a nasogastric tube and who had executed a living will, the trial court erred in granting summary judgment for plaintiff nursing home where genuine issues existed as to whether the attending physician directed the removal of the nasogastric tube and whether a second physician confirmed the attending physician's conclusion that the patient's condition was terminable and incurable before the tube was removed by court order as was required by the living will statute, N.C.G.S. § 90-321. If the statutory requirements were met, then defendant would be responsible only for charges from the date they were met until her husband would have died had the tube been removed, instead of for charges from the date she requested removal of the tube until he actually died some four months later.

**Am Jur 2d, Death § 686.**

**Living wills: validity, construction, and effect. 49 ALR4th 812.**

**2. Judgments § 208 (NCI4th)— collateral estoppel inapplicable**

A finding of the reasonableness of plaintiff nursing home's refusal to remove a feeding tube from defendant's husband without a court order was not necessary for a judge to conclude that the requirements of the living will statute had been met and that the tube should be removed; therefore, collateral estoppel did not apply to prevent defendant from "relitigating" the issue of the reasonableness of plaintiff's conduct in plaintiff's action to recover for nursing home services rendered to defendant's husband after defendant had requested removal of the feeding tube.

**Am Jur 2d, Judgments §§ 514-639.**

**FIRST HEALTHCARE CORP. v. RETTINGER**

[118 N.C. App. 600 (1995)]

Judge WALKER dissenting.

Appeal by defendant from order entered 19 January 1994 by Judge C. Preston Cornelius in Forsyth County Superior Court. Heard in the Court of Appeals 2 March 1995.

Lawrence Rettinger (hereinafter Mr. Rettinger) cared for his first wife during her prolonged illness and eventual death from cancer. Mr. Rettinger married his second wife, Nell Rettinger (hereinafter Mrs. Rettinger), in November 1985. Prior to marrying Mrs. Rettinger, Mr. Rettinger was diagnosed with Parkinson's Disease. On 18 August 1983, Mr. Rettinger executed a "Declaration Of A Desire For A Natural Death" pursuant to G.S. 90-321. In that document, Mr. Rettinger stated that he did not wish his life to be prolonged by "extraordinary means if [his] condition [was] determined to be terminal and incurable."

Mr. Rettinger was placed in the Winston-Salem Convalescent Center (hereinafter Hillhaven) on 11 January 1990. Mrs. Rettinger signed a document entitled "Standard Nursing Facility Services Agreement" in which she agreed to be financially responsible for services provided by Hillhaven to her husband. Hillhaven was aware that Mr. Rettinger had executed a living will and retained a copy of it in Mr. Rettinger's medical file at Hillhaven.

On 4 February 1991, Dr. Fredric J. Romm, Mr. Rettinger's attending physician, transferred Mr. Rettinger to North Carolina Baptist Hospital for treatment of pneumonia. Dr. Mark Knudson, Mr. Rettinger's primary physician at Baptist Hospital, inserted a nasogastric tube to facilitate administration of his pneumonia medications. On 4 March 1991, Mr. Rettinger was returned to Hillhaven. Mrs. Rettinger stated in her affidavit that when Mr. Rettinger was returned to Hillhaven, he was "bedridden, lying in a fetal position, unable to move and unable to communicate." She further stated that the family was informed that "he had little mental functioning, suffered from dementia, was in the late stages of irreversible Parkinson's Disease, and would die." Mrs. Rettinger alleged that Dr. Knudson had assured her that the tube would be removed within ten days of her husband's return to Hillhaven. The tube was not removed.

Mrs. Rettinger prepared a "No Code Blue" form for Mr. Rettinger in March 1991, requesting that the staff not resuscitate her husband. Because she amended the form to request that no nasogastric tube be used, Hillhaven returned the form as invalid. Mrs. Rettinger then attempted to move her husband to another facility, but could not find

another facility. She stated that she wanted to take him home but the Hillhaven staff told her she could not, "apparently because they felt [she] was not able to care for him." In March 1991, Dr. Romm informed Mrs. Rettinger that Hillhaven had a policy of not removing nasogastric tubes "if to do so would likely cause a patient to starve or dehydrate to death." In a letter dated 20 June 1991, Hillhaven informed Mr. Rettinger's attorney, Norman L. Sloan, that Hillhaven would not remove the nasogastric tube unless the requirements of G.S. 90-321 were satisfied or Mrs. Rettinger obtained a court order for the removal of the tube. Mrs. Rettinger then filed suit against Hillhaven on 27 June 1991 for a declaratory judgment requiring removal of the nasogastric tube. On 12 September 1991, Judge William B. Reingold ordered that the tube be removed. There was no appeal from Judge Reingold's order. The tube was removed on 5 October 1991 and Mr. Rettinger died on 22 October 1991.

On 4 May 1993, Hillhaven filed a complaint against Mrs. Rettinger, individually and as personal representative of Mr. Rettinger's estate, for $14,458.43 for services rendered to Mr. Rettinger from 26 June 1991 to 22 October 1991. On 21 May 1993, Kenneth P. Carlson, Jr. was appointed as Guardian Ad Litem for Mrs. Rettinger to represent her in the action filed by Hillhaven. An answer was filed on Mrs. Rettinger's behalf on 23 June 1993 denying any indebtedness to Hillhaven based in part on the assertion that the services for which Hillhaven sought payment had been expressly rejected by Mr. Rettinger through his living will and by Mrs. Rettinger. Hillhaven made a motion for summary judgment on 4 January 1994 which was granted by Judge C. Preston Cornelius on 19 January 1994. Subsequently, Mrs. Rettinger died. Ashlyn H. Chadwick, the personal representative of Mrs. Rettinger's estate and the substituted personal representative of Mr. Rettinger's estate, appeals.

*Allman Spry Humphreys & Leggett, P.A., by David C. Smith and Linda L. Helms, for defendant-appellant.*

*Smith Helms Mulliss & Moore, L.L.P., by Maureen Demarest Murray and Christine T. Nero, for plaintiff-appellee.*

EAGLES, Judge.

I.

[1] Mrs. Rettinger argues that genuine issues of material fact exist, making summary judgment for Hillhaven improper. Summary judg-

ment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, . . . [viewed in the light most favorable to the non-moving party,] show that there is no genuine issue as to any material fact and that a[] party is entitled to a judgment as a matter of law." G.S. 1A-1, Rule 56(c).

Mrs. Rettinger argues that genuine issues of material fact exist as to whether the requirements of G.S. 90-321 were met before the nasogastric tube was removed by court order in September 1991. G.S. 90-321(b) provides:

If a person has declared . . . a desire that his life not be prolonged by extraordinary means or by artificial nutrition or hydration, and the declaration has not been revoked . . . ; and

(1) It is determined by the attending physician that the declarant's present condition is

a. Terminal and incurable; or

. . . .

c. Diagnosed as a persistent vegetative state; and

(2) There is confirmation of the declarant's present condition as set out above in subdivision (b)(1) by a physician other than the attending physician;

then extraordinary means or artificial nutrition or hydration, as specified by the declarant, may be withheld or discontinued upon the direction and under the supervision of the attending physician.

Here, Dr. Romm stated in his affidavit that he signed a form sent by Norman Sloan, Mr. Rettinger's attorney, "which stated that Mr. Rettinger's condition was terminal and incurable and ordered removal of the nasogastric tube." The form, signed by Dr. Romm on 25 June 1991, provided:

I have examined Lawrence John Rettinger and have determined that his medical condition is terminal and incurable. Nutrition and hydration provided to Mr. Rettinger through a nasogastric tube constitutes life-prolonging extraordinary means. Consistent with the Declaration of a Desire for a Natural Death executed by Lawrence J. Rettinger, I order the removal of the nasogastric tube. The family recognizes that implementation of Mr. Rettinger's Declaration of a Desire for a Natural Death will

result in Mr. Rettinger's death within a relatively short period of time.

The language of this form conforms to the requirement in G.S. 90-321(b) that the attending physician determine that the declarant is terminal and incurable.

Hillhaven argues that Dr. Romm never told Hillhaven to remove the tube after he signed the form. However, the statute does not specify that the attending physician has to personally direct the facility to remove the tube. The statute simply provides that "extraordinary means . . . may be withheld or discontinued upon the direction and under the supervision of the attending physician." Therefore, there is a genuine issue of material fact as to whether Dr. Romm's order to remove the nasogastric tube in the 25 June 1991 form he signed satisfies the language of G.S. 90-321(b) that the attending physician direct the removal of the nasogastric tube and whether his order was communicated to Hillhaven.

G.S. 90-321(b) requires a physician other than the attending physician to confirm the attending physician's conclusion that the declarant's condition is terminal and incurable. Dr. Romm stated in his affidavit that "[t]he findings in the [25 June 1991] form were . . . never confirmed by another physician." However, Norman Sloan stated in his affidavit that a second doctor was willing to confirm Dr. Romm's findings at the time Dr. Romm signed the form. Judge Reingold's September 1991 order, attached as Exhibit C to Hillhaven's May 1993 complaint, included a finding of fact that "Dr. Michael Adler, a colleague of Dr. Romm, saw and observed Mr. Rettinger in July, 1991, and it is Dr. Adler's opinion, which this court accepts, that Mr. Rettinger has severe Parkinson's disease and dementia and there is confirmation of Mr. Rettinger's present condition by Dr. Adler." Judge Reingold's finding of fact, combined with Mr. Sloan's assertion in his affidavit, creates a material issue of fact as to whether the statute's requirement of confirmation by a second doctor was met in July 1991. If the requirements of the statute were met in July 1991, then according to Hillhaven's own policy, set out in its 20 June 1991 letter to Mr. Sloan, Hillhaven should have removed the nasogastric tube in July 1991.

## II.

[2] Hillhaven argues that Mrs. Rettinger is collaterally estopped by Judge Reingold's order from "relitigating the issue of the reasonable-

ness of [Hillhaven's] conduct concerning removal of the feeding tube." For collateral estoppel to apply:

> (1) The issues to be concluded must be the same as those involved in the prior action; (2) in the prior action, the issues must have been raised and actually litigated; (3) the issues must have been material and relevant to the disposition of the prior action; and (4) the determination made of those issues in the prior action must have been necessary and essential to the resulting judgment.

*King v. Grindstaff*, 284 N.C. 348, 358, 200 S.E.2d 799, 806 (1973). Hillhaven bases its collateral estoppel argument on Judge Reingold's finding of fact that:

> It was reasonable for William L. Littlejohn, Jr., in his official capacity as Area Administrator of Winston-Salem Convalescent Center, Winston-Salem Convalescent Center, the Hillhaven Corporation and Dr. Fredric Romm to refuse to consent to the family's request that the nasogastric tube be withdrawn from Mr. Rettinger without a Court order authorizing withdrawal of the nasogastric tube.

Hillhaven's argument that Judge Reingold's finding of fact collaterally estops Mrs. Rettinger from "relitigating" the issue of Hillhaven's actions fails because determination of the "reasonableness" of Hillhaven's actions was not necessary for Judge Reingold to conclude that the statutory requirements had been met so the nasogastric tube should be removed. Accordingly, collateral estoppel does not apply here.

### III.

Mrs. Rettinger also argues that summary judgment was not appropriate because she is not obligated to pay for medical services rendered by Hillhaven after 26 June 1991. Mrs. Rettinger argues that she had previously requested removal of the nasogastric tube and if her late husband's declaration and her expressed wishes for the nasogastric tube to be removed had been honored, no other medical services would have been necessary. The plain language of the "Standard Nursing Facility Services Agreement" that Mrs. Rettinger signed when Mr. Rettinger was admitted to Hillhaven provided that Mrs. Rettinger agreed to pay for all services rendered to her husband. The agreement contains no language stating that Mrs. Rettinger would only pay for services she authorized. However, we have concluded above that

there are genuine issues of material fact as to whether and when the requirements of G.S. 90-321(b), the living will statute, were met. If a jury determines that the requirements of the living will statute were complied with in July 1991, then the nasogastric tube should have been removed at that time. If the nasogastric tube had been removed in July 1991, it is likely that Mr. Rettinger would not have survived until 22 October 1991 and Mrs. Rettinger's alleged financial obligation to Hillhaven would have been substantially less.

Accordingly, we reverse the summary judgment order and remand for trial to determine whether the requirements of G.S. 90-321(b) were satisfied in July 1991. If so, the factfinder will then need to determine how long after the nasogastric tube was removed would Mr. Rettinger have likely survived. If the requirements of G.S. 90-321(b) are found by the factfinder to have been met, Mrs. Rettinger will be responsible for paying for services rendered between 26 June 1991 and the date the factfinder determines Mr. Rettinger would have died if the tube had been removed in July 1991, but not for any costs incurred thereafter.

IV.

Hillhaven argues in their brief that Mrs. Rettinger guaranteed payment of the services rendered from 26 June 1991 until 22 October 1991. We have reviewed the agreement which Mrs. Rettinger signed and conclude that Mrs. Rettinger did not sign as a guarantor. Under the terms of the agreement, Mrs. Rettinger was a joint obligor. Accordingly, Hillhaven's argument based on Mrs. Rettinger's purported status as a guarantor fails.

V.

Hillhaven also argues that Mrs. Rettinger is liable for the services rendered under the doctrine of necessaries. We do not address this argument because we have already concluded that Mrs. Rettinger will be obligated to pay for the entire amount of medical services rendered by Hillhaven pursuant to the plain language of the agreement she signed unless the factfinder determines that the requirements of G.S. 90-321(b) were met in July 1991.

In sum, we reverse the entry of summary judgment and remand for trial.

Reversed and remanded.

FIRST HEALTHCARE CORP. v. RETTINGER

[118 N.C. App. 600 (1995)]

Judge McGEE concurs.

Judge WALKER dissents.

Judge. WALKER dissenting.

I disagree that genuine issues of material fact exist as to whether the requirements of N.C. Gen. Stat. § 90-321 were met before the nasogastric tube was removed by court order in September 1991 and thus dissent.

Plaintiff submitted the affidavit of Dr. Frederic L. Romm and Lawrence Rettinger's medical chart with its motion for summary judgment. In his affidavit, Dr. Romm states that:

12. Between March 1991 and June 1991, I never made the necessary findings nor documented any findings in the medical record that Mr. Rettinger was terminal or incurable or that the nasogastric tube constituted extraordinary means.

13. In June 1991, Hillhaven's policy was not the reason that I did not order withdrawal of Mr. Rettinger's nasogastric tube or make the findings required under the North Carolina Right to Natural Death Act. Given my understanding of the law and the advice of my attorney, I was not comfortable withdrawing the nasogastric tube from Mr. Rettinger without a court order.

14. In July 1991, I took a one-month leave of absence. Just prior to this leave of absence, I received a form from the Rettingers' attorney, Mr. Norman Sloan, which stated that Mr. Rettinger's condition was terminal and incurable and ordered removal of the nasogastric tube.

15. On June 25, 1991, I signed the form and returned it to Mr. Sloan . . . I did not send a copy of the form to Hillhaven or ever communicate to Hillhaven that I had signed it. This form was never entered into Mr. Rettinger's medical record. The findings in the form were also never confirmed by another physician.

. . .

17. As a result of the court's order, I made findings in Mr. Rettinger's medical record that his condition was terminal and incurable and that the nasogastric tube was extraordinary means. The findings were confirmed by another physician in the medical record. I then ordered removal of the tube and personally

removed the nasogastric tube from Mr. Rettinger. Per my orders, Hillhaven fed Mr. Rettinger by mouth a liquid and then a puree diet.

The medical chart confirms Dr. Romm's statement that he made no findings in the chart pursuant to N.C. Gen. Stat. § 90-321 until 4 October 1991, after the court's order, and that on 5 October 1991, another physician confirmed Dr. Romm's findings in the medical chart.

This evidence establishes that the three requirements of N.C. Gen. Stat. § 90-321 were not met until 5 October 1991, after the court ordered that the tube be removed. Assuming that the language of the form signed by Dr. Romm on 25 June 1991 conforms to the requirement of N.C. Gen. Stat. § 90-321(b)(1), defendant produced no evidence tending to show that defendant or her attorney informed plaintiff that Dr. Romm had made the requisite findings. Moreover, plaintiff's evidence was in no way contradicted by defendant's evidence that a second physician was willing to confirm Dr. Romm's findings at the time he signed the form or by Judge Reingold's September 1991 order containing a finding of fact that "Dr. Michael Adler, a colleague of Dr. Romm, saw and observed Mr. Rettinger in July, 1991, and it is Dr. Adler's opinion, which this court accepts, that Mr. Rettinger has severe Parkinson's disease and dementia and there is confirmation of Mr. Rettinger's present condition by Dr. Adler."

Since defendant failed to produce any evidence to contradict plaintiff's evidence that the requirements were not met until 5 October 1991, there were no genuine issues of material fact as to whether the requirements of N.C. Gen. Stat. § 90-321 were met before the nasogastric tube was removed on 5 October 1991 pursuant to the court's order in September 1991. Thus, summary judgment was properly granted in plaintiff's favor.